IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| JEFFREY W. RUCH, | ) | CASE NO. 3:19-CV-02422 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**Introduction**

Before me[1] is an action by Jeffrey W. Ruch under 42 U.S.C. §405(g) seeking judicial review of the 2018 decision of the Commissioner of Social Security that denied Ruch's 2015 applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and file the transcript of the administrative proceedings.[4]

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Jack Zouhary. ECF No. 14.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.

Pursuant to my initial[5] and procedural[6] orders, the parties have filed briefs,[7] along with supporting fact sheets[8] and charts.[9] The parties have met and conferred with the purpose of reducing the issues in dispute[10] and have participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be reversed.

## Facts

**A.    ALJ's Decision**

Ruch was born in 1966, has a high school education, and previously worked as a handyman.[12] The ALJ found that Ruch has the following severe impairments:

> Sacroiliitis; spinal stenosis; posterior tibial tendonitis of the right leg; post-traumatic osteoarthritis of the right ankle and foot; impingement syndrome of the right shoulder; DJD of the left shoulder; vasodepressor syncope; headaches; sleep apnea; anxiety; somatic disorder; and fibromyalgia.[13]

After concluding that none of these impairments met or equaled a listing,[14] the ALJ reviewed the evidence and found that Ruch has the residual functional capacity (RFC) to perform light work, with the following limitations:

> Occasional ramps and stairs; no ladders, ropes, scaffolds; occasional stooping, kneeling, crouching, crawling; occasional overhead reaching; no unprotected

---

[5] ECF No. 6.
[6] ECF No. 11.
[7] ECF Nos. 15 (Ruch brief), 18 (Commissioner brief), 20 (Ruch reply).
[8] ECF Nos. 15, Attachment 1 (Ruch), 19 (Commissioner).
[9] ECF No. 15, Attachment 2 (Ruch).
[10] ECF No. 22.
[11] ECF No. 24.
[12] Tr. at 61.
[13] *Id*. at 54.
[14] *Id.*

2

heights; simple, routine tasks, but not at a production rate pace, for example, no assembly line work; frequent interaction with supervisors, coworkers and the public; occasional changes in the workplace.[15]

The ALJ determined that Ruch could no longer perform his past relevant work under the RFC.[16] Accordingly, a vocational expert (VE) testified that given Ruch's age, education, work experience and RFC Ruch could perform the jobs of office helper, storage facility rental clerk, and photo copy machine operator, and that a significant number of each job exists in the national economy.[17] Ruch was then found not disabled.[18]

**B. Ruch's Position**

Ruch here raises two arguments:

1. The ALJ failed to discuss whether Ruch's neuropathy was a medically determinable impairment, let alone a severe impairment, thus rendering flawed all subsequent analysis.[19]
2. The ALJ failed to provide meaningful analysis of Ruch's pain and other symptoms related to his physical limitations.[20]

As to the issue related to neuropathy, Ruch argues that because the ALJ did not identify neuropathy as a medically determinable impairment, the subsequent analysis was flawed because it did not consider the symptoms of the neuropathy.[21] Further, Ruch claims that the ALJ also erred by relying here on a state agency reviewing source opinion that did

---

[15] *Id.* at 56.
[16] *Id.* at 61.
[17] *Id.*
[18] *Id.*
[19] ECF No. 15 at 5-8.
[20] *Id.* at 8-14.
[21] *Id.* at 6.

3

not consider a 2016 EMG study that showed evidence of motor-sensory polyneuropathy that moderately-severely affected the motor nerves.[22]

Concerning the second issue related to Ruch's pain, Ruch points out that while the ALJ concluded that his complaints of pain were inconsistent with medical evidence, the ALJ failed to mention the 2016 EMG study;[23] mischaracterized a rheumatology evaluation as showing "no findings" when it confirmed a diagnosis of fibromyalgia[24] and overstated Ruch's ability to engage in daily activities by simply stating, without more, that Ruch attended an unspecified number of "free movies and concerts."[25]

In addition, Ruch asserts in this regard that the ALJ did not sufficiently develop the record.[26] Specifically, he contends that when the ALJ was obtaining testimony about his activities of daily living, the ALJ focused on "isolated example" without giving Ruch, who was without counsel at the hearing, the chance to explain how he performed the activities and how frequently.[27]

## C. The Commissioner's Arguments

The Commissioner contends first that Ruch's complaint about the ALJ not considering his neuropathy is "a red herring" since "the ALJ considered it repeatedly" and

---

[22] *Id.*
[23] *Id.* at 9.
[24] *Id.* at 10.
[25] *Id.* at 10-11.
[26] *Id.* at 13.
[27] *Id.* at 12-13.

4

Ruch "does not argue that his neuropathy caused any significant limitations.[28] Further, the Commissioner notes that no clinical finding established any functional limitation from Ruch's neuropathy and the ALJ discussed the neuropathy "at length." [29]

As to Ruch's subjective symptoms and the analysis of credibility, the Commissioner restates the rule that an ALJ is not required to accept a claimant's subjective complaints of pain and that a reviewing court accords an ALJ's credibility finding great weight.[30] That said, an ALJ must support a finding on credibility with sufficient evidence from the record, cited with sufficient specificity so as to make the ALJ's reasoning clear to the reviewing court.[31]

**Analysis**

The claims here are reviewed under the well-known substantial evidence standard, which need not be detailed again here.

As is clear from the statement of issues, the question of whether the ALJ erred by failing to find that Ruch's neuropathy was a severe impairment is closely connected to the question of whether the ALJ erred in discounting Ruch's credibility as to symptoms of that neuropathy. Accordingly, these issues merge in the analysis that follows.

---

[28] ECF No. 18 at 1.
[29] *Id.* at 2-3.
[30] *Cunningham v. Astrue*, 360 Fed. Appx. 606, 613 (6th Cir. 2010).
[31] *Id.* at 614.

5

While the ALJ did not discuss Ruch's neuropathy at Step Two, he does mention at Step Three that no treating or examining source concluded that any impairment met or equaled a listing.[32] Moreover, in analyzing the evidence himself, the ALJ considered, *inter alia*, the listing for peripheral neuropathy.[33] I noted in *Godec v. Commissioner*[34] that "[i]t is the claimant who has the burden of proof at step two, and in the absence of a medical source opinion  to the contrary," there is no basis in the record to reverse an ALJ at Step Two where the ALJ did discuss at Step Three that he reviewed the evidence for whether Ruch met the listing for peripheral neuropathy.[35]

The issue then becomes whether the ALJ then properly addressed the evidence of neuropathy that does exist in the record and properly incorporate any resulting functional limitation into the RFC. The ALJ here did reference neuropathy multiple times in connection with formulating the RFC.[36] Significantly, after noting some of the occasions where neuropathy appears in the medical evidence, the ALJ noted that "physical examinations have also failed to show consistent limitations," observing, for example, that some examinations found an antalgic gait, while others stated he had a normal gait.[37]

---

[32] Tr. at 54.
[33] *Id*.
[34] 2016 WL 3854456 (N.D. Ohio July 15, 2016).
[35] *Id*. at **6-7.
[36] Tr. at 56; 57 (Nov. 2014), (Jan. 2015), (May 2015); 58 (March 2016), (June 2016), (August 2017), (April 2018).
[37] *Id*. at 59.

6

The ALJ then reviewed the activities of daily living, citing Ruch's attendance at concerts, his friendships at church, an invitation for Easter, and two occasions when he mentioned that he was "feeling well" and had "been finding fun things to do."[38] Here, the ALJ made a specific finding that "[t]hese activities are inconsistent with the allegations of pain …."[39]

The ALJ briefly reviewed that medical opinion evidence.[40] In a reference that appears to relate to neuropathy, the ALJ gave the opinion evidence on reconsideration "partial weight" with the understanding that "due to degenerative changes and arthritis in various joints, and considering the pain and fatigue associated with fibromyalgia, " additional limitation to the light work finding were appropriate.[41]

Thus, as noted, while the ALJ cited to some references to neuropathy, arthritis and fibromyalgia in the analysis, none of those were in the form of a functional opinion. Rather, the ALJ ultimately relied on May 2016 functional opinion from a state agency reviewing physician to formulate the RFC.

Critically, that reviewing source did not have access to nearly two years of relevant medical records. In particular, Among the records not reviewed by the state agency reviewer are the records from Dr. Ryan Wagner, M.D., who records fourteen visits with

---

[38] *Id.*
[39] *Id*.
[40] *Id*. at 60.
[41] *Id*.

7

Ruch between July 2016 and August 2018,[42] and the five visits to Dr. Nicole Danner, D.O., between September 2016 and July 2018.[43] Those records are full of treatment notes concerning Ruch's neuropathy and, while briefly cited, are not discussed in any meaningful way. Also, in addition, the state agency reviewer never saw the March 2018 EMG study that showed evidence of severe motor and minimal sensory neuropathy.[44]

In sum, while these medical sources may not have offered an opinion as to any limitations from Ruch's neuropathy, their treatment notes are replete with comments about the neuropathy getting worse, *i.e.*, more painful,[45] and affecting his balance.[46] As such, it is incorrect to state, as does the Commissioner, that there is no evidence from medical sources as to functional limitations from neuropathy in the record[47] and imprecise to claim, as the Commissioner also does, that the 2018 EMG can be minimized because no clinical correlation was present.[48]

---

[42] *Id*. at 1298-1302; 1292-97; 1289-91; 1285-88; 1281-84; 1278-80; 1268-77; 1261-67; 1254-60; 1247-53; 1240-46; 1373-77; 1369-72; 1378-81 (unsigned and incomplete).
[43] *Id*. at 1207-10; 1202-06; 1343-46; 1355-58; 1364-68.
[44] *Id*. at 1352-54.
[45] *Id*., e.g., 1207-10; 1261-67; 1278-80.
[46] *Id*. at 1364-68.
[47] See, ECF No. 18 at 3.
[48] *Id*. at 2.

Further, while activities of daily living can be used in formulating the RFC,[49] activities of daily living, without more, do not necessarily show the claimant can perform the activity consistently as is the case with regular employment.[50]

From this, I find that the ALJ erred in addressing Ruch's neuropathy as it relates to the RFC. First, the ALJ erred by only superficially citing, and then mischaracterizing, two years of detailed treatment notes that contain multiple relevant findings as to functional limitations arising from the acknowledged neuropathy and then compounded the error by relying on the functional limitation opinion of a reviewing source that did not see the two years 'worth of relevant evidence. It was not enough to merely mention the neuropathy a few times without addressing the significant amount of treatment notes that bear directly on the question of function.

Further, the ALJ erred by relying on activities of daily living to prove more than they do. Without a more detailed explanation of the circumstances directly applying the activities to work-related functions, the mere statement that Ruch watched free concerts or went to an Easter dinner cannot support any relevant functional finding. Finally, to the extent that these activities were cited, as indeed they were, as proof that they are inconsistent with allegations of pain, that conclusion is not supported by substantial evidence.

---

[49] *Deffinger v. Comm'r*, 2020 WL 52347937, at *6 (S.D. Ohio Sept. 3, 2020) (adopting R&R).
[50] *Gayheart v.Comm'r*, 710 F.3d 365, 377-78 (6th Cir. 2013).

## Conclusion

For the reasons stated, the decision of the Commissioner is found to be not supported by substantial evidence and is therefore reversed. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 31, 2021                                s/William H. Baughman Jr.
                                                    United States Magistrate Judge